WARD, Respondent, vs. RUSSELL and another, Appellants.

*February 26—March 22, 1904.*

*Deeds: Delivery: Agency of depositary: Death of grantor: Sale of land:* Bona fide *purchaser: Possession.*

1. Where a person, in expectation of death, executes a conveyance and places it in the hands of a depositary for delivery after his death, but reserves the right to reclaim the instrument in case he gets well, there is no delivery, and the agency of the depositary to make delivery terminates with the grantor's death.

2. Although the vendor of land and of personalty had record title to the land and apparent title to the personalty under bills of sale, the facts that the land was not in her possession but in the possession of the heir of a person under whom she claimed, and that the personalty was held by the special administrator of said person, are sufficient to put the purchaser, having knowledge of such facts, upon inquiry as to the vendor's actual rights.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

One Cassius C. Ward, apprehending speedy death, on April 5, 1902, executed a deed of all his real estate and a bill of all his personalty to Walter C. Ward, a brother, and placed them in the hands of one Parkinson, to be delivered to his brother in case he died. On the same day, in pursuance of understanding between him and Cassius, Walter C. Ward executed a quitclaim deed and a bill of sale of one half of said realty and personalty to the appellant *Melissa E. Russell,* a sister, which also were left with the notary for delivery to her after delivery of the deed and bill of sale to Walter. Cassius died May 9, 1902, unmarried, childless, and leaving no father; the plaintiff, his mother, being his sole heir at law. Thereupon, within about a week, the depositary delivered the several deeds and bills of sale, and

the former were at once duly recorded by the grantees.   On June 27th the appellant *Russell* executed a deed and bill of sale of her interest to the appellant *Hogan;* the transfer being consummated not until about July 6th.   On July 31, 1902, the plaintiff commenced this action to cancel both of said deeds of realty on the ground of fraud and undue influence, and also on the ground of nondelivery.   The former ground was substantially abandoned, and after trial the court made findings negativing the delivery of the deed, and charging *Hogan* with notice of plaintiff's rights, and entered judgment barring the defendants from any right or title in the land, and setting aside both of the deeds.   From that judgment the defendants *Russell* and *Hogan* appeal.

For the appellants there was a brief by *Ryan, Merton & Newbury,* and oral argument by *E. Merton.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* and oral argument by *J. V. Quarles, Jr.*

Dodge, J.   The plan for deeding his property was arranged between Cassius C. Ward and the attorney, Parkinson, at a private interview.   Accordingly the latter prepared deeds and bills of sale, and on the next day went to Ward's sickroom, called in some or all of the parties interested, and there took execution by Cassius of the deed and bill of sale to Walter, and affixed his own certificate of acknowledgment. Parkinson explained the arrangement to all present, whereupon, at some time during the interview, after the signature, and while the papers were in the manual possession of Parkinson, Cassius said, "I suppose if I get well I can get these papers back from you," to which Parkinson assented, and Cassius said that he would come round for them after he got well.   The principal contention is whether a completed, absolute delivery of these papers had been made before this reservation was imposed, or, on the contrary, that reserva-

tion was a part of the instructions under which they were deposited. The testimony is not at all clear on the subject. There seems to have been little said, other than a rehearsal by Parkinson of the plan arranged the day before. The express assent of Parkinson and the silence of the appellant *Russell,* who was present, are both confirmatory of the general understanding that the transaction was not closed at the time of the quoted remarks. There is no proof of the formalities by which the papers came to be then in Parkinson's hands. Of course, after signature by the sick man in bed, they would naturally have been taken by the notary for witnessing and certification, and his mere possession would not necessarily prove more than such an act. In presence of this uncertainty, the trial court has found that this reservation of right to reclaim the papers was part of the instructions under which deposit was made. We cannot find any clear preponderance of evidence to the contrary, and feel constrained to sustain that finding.

The law applicable to the state of facts so found is not doubtful, nor, indeed, seriously disputed. Retention by the grantor of right of control over the papers in the possession of a depositary deprives the manual tradition of effect as a delivery. The papers are still held by the latter merely as agent for the former, and therefore in legal effect by him. Such agency is terminated by the grantor's death, and delivery thereafter to the grantee is unauthorized and of no effect. *Prutsman v. Baker,* 30 Wis. 644; *Williams v. Daubner,* 103 Wis. 521, 79 N. W. 748.

The court has found that appellant *Hogan* had notice of facts and circumstances to put him to investigation which would have disclosed plaintiff's rights. This finding is supported by evidence that *Mrs. Russell* was out of possession at the time of her sale to him, and that apparently plaintiff was in possession of the land, and a special administrator of

Cassius C. Ward held the personal property. *Hogan* offered no evidence of ignorance on his part. We must sustain this finding of fact also.

We thus reach the conclusion that the judgment, having support in findings not themselves contrary to the evidence, is correct.

*By the Court.*—Judgment affirmed.