DARLING, Appellant, vs. WILLIAMS and another, Respondents.

*January 11—April 6, 1926.*

*Deeds: Essentials of valid delivery: Evidence: Sufficiency.*

1. To constitute a valid delivery of a deed the grantor must not only intend a delivery but must part with the dominion and control of the deed, and the grantee must accept the delivery made. p. 490.
2. The evidence in this case is *held* to show that a deed was left with a bank, subject to the control of the grantor during her lifetime, and on her death was to be delivered to the grantee and recorded. There having been no valid delivery of the deed during the grantor's lifetime, she died seized of the property mentioned therein, which passed under her will. p. 491.

APPEAL from a judgment of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge. *Reversed.*

The plaintiff as residuary legatee of his mother, Eliza Chase, brought an action of ejectment against the defendant *Bertha Williams,* a daughter and sole heir of Myrtle Lorrig, who was a daughter of Mrs. Chase. *Fred Zahn,* the other defendant, is a tenant claiming under *Bertha Williams.* It is admitted that in February or March, 1922, Eliza Chase

was the owner in fee simple of the premises in question. On that day she executed a deed naming her daughter Myrtle Lorrig as grantee. The whole question turns upon whether or not this deed was delivered to Myrtle Lorrig. W. B. Kramer, cashier of the Mattoon State Bank, drew the deed, and his testimony as to the fact of delivery is the only testimony in the case. It is substantially this: Mrs. Chase said that she had been living with Myrtle for a long time and she thought that Myrtle was entitled to everything that she has and she wanted her to have this deed, so I made out the deed according to her instructions. I went over there to the house twice. She had sent for me. I went over there to make this deed and to get the information and instructions from her to make this deed. I then went back to the bank and made out the deed and took it back with a notary, Mary Staege, and there she executed the deed, and after the deed was executed I instructed Myrtle Lorrig to pay Eliza Chase one dollar for the deed, which she did. When the dollar was paid the deed was left with me just the same, and I gave a receipt to Mrs. Chase that we would hold the deed until her death and deliver it to Myrtle Lorrig. The receipt was as follows:

"Dated 3–21–22.

"Received from Eliza Chase the deed of two acres of land in Mattoon which we will deliver to Myrtle Lorrig only after your death, as per your instructions.

"MATTOON STATE BANK.
"W. B. Kramer, Cashier."

Mrs. Chase wanted it to be delivered at that time, and when I took it to Myrtle out in the kitchen she didn't want it to be, she didn't want to take possession of it at that time because she said if her mother wanted to go and live somewhere else she would have the property. That is the reason that I gave the receipt the way I did. There was nothing said about Eliza Chase wanting to sell the property or might want to sell it. I don't think it was mentioned that she

might want to sell it before her death. One of the reasons why the deed was not delivered at that time, or why the deed was made at all, was, I presume, to save probate expenses, made instead of a will. There was nothing else said about that. I marked right on the outside of the deed: "To be delivered and recorded only after death of Eliza Chase." That is the memorandum I made on the deed. After the deed was made out Mrs. Chase said "Give that to Myrtle." She said something to Myrtle. That notation was made on the deed for the reason that Myrtle didn't want to have the deed until after her mother's death. The instructions for leaving it at the bank came from Myrtle and not from Mrs. Chase. Myrtle didn't want possession of the deed until after her mother's death, because if her mother changed her mind about living with her she could take the property and do what she liked with it. That was the reason. Her mother said for her to have the deed right at that time. She had no strings tied to her deed. I don't know as she said those words "Give her the deed," but I don't know but what that was about the wording. After Myrtle objected to taking the deed at that time Mrs. Chase consented to the arrangement to leave the deed in the bank with me. That was all right then. That was my suggestion. I gave her a receipt right there,—this receipt that is read into the record. My recollection is that Mrs. Chase did consent that the deed be kept by me. That was understood by both parties. She never afterwards made demand on me to deliver it back. I say in the receipt, "hold according to your instructions" or "as per your instructions." I did have instructions from Mrs. Chase to correspond to what Myrtle wanted. That is the way I wrote it. I did act on Mrs. Lorrig's suggestion and not on that of Mrs. Chase. If I had, that deed would have been recorded before her death. When Mrs. Lorrig said she did not want the deed delivered at that time, that it should be kept by me, Mrs. Chase consented to it. If she didn't I would not have made

out the receipt that way. Mrs. Chase never told me to hold the deed. When I finally got through, the instructions were to hold it until her death and then deliver it,—record and deliver it. She did not at any time say that she wanted the deed back or that she might want it back or that she might wish to recall it. I made a notation on the deed at the time.

The trial court found that there was a delivery of the deed, and entered judgment dismissing plaintiff's complaint upon the merits. From such judgment the plaintiff appealed.

For the appellant there was a brief by *Dillett & Fischer* of Shawano, and oral argument by *C. F. Dillett.*

For the respondents the cause was submitted on the brief of *Winter & Winter* of Shawano.

The following opinion was filed February 9, 1926:

VINJE, C. J. The case presents a question of fact rather than one of law. It is well settled that to constitute a valid delivery of a deed the grantor must not only intend a delivery but must part with dominion and control of the deed and the grantee must accept the delivery made. *Prutsman v. Baker,* 30 Wis. 644; *Butts v. Richards,* 152 Wis. 318, 140 N. W. 1; *Zimmerman v. Zimmerman,* 165 Wis. 146, 161 N. W. 369; *Padden v. Padden,* 171 Wis. 212, 177 N. W. 22. Here we have perhaps an intent on the part of the grantor, Mrs. Chase, that there shall be a delivery, but such delivery is defeated in two ways: the grantor did not part with the control of the deed and the grantee refused to accept delivery. It seems to us that the only reasonable conclusion to be drawn from the whole evidence is that the deed was left with the bank subject to the control of the grantor during her lifetime and was then to be delivered to the grantee and recorded. It is quite immaterial how such result was reached or what was said by the different parties before they finally agreed upon the plan actually adopted. The directions for such a plan may well have come

in part from Mrs. Lorrig. That does not change its nature or effect. The whole conversation, the receipt given, and what was done by the bank, spell only one purpose, namely, to leave the deed with the bank so that Mrs. Chase could control it during her lifetime, and upon her death have it delivered to the grantee. The result is that, there having been no valid delivery of the deed in the lifetime of Mrs. Chase, she died seized of the property and it passed under her will.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment confirming the title in plaintiff.

A motion for a rehearing was denied, with $25 costs, on April 6, 1926.