No. 38,139

In the Matter of the Estate of CHARLES A. HULTEEN, deceased. (FREDA E. HUBLER, Administratrix of the estate of Charles A. Hulteen, deceased, *Appellant,* v. BETHEL LUTHERAN CHURCH OF VILAS, WILSON COUNTY, KANSAS, a corporation, and HERMAN ANDERSON, EVERETT OLSON, KENNETH NELSON, NEIL NELSON, WALTER ANDERSON and ELMER ANDERSON, Trustees of said Bethel Lutheran Church of Vilas, *Appellees.*)

(227 P. 2d 112)

Opinion filed January 27, 1951.

*Charles F. Forsyth,* of Erie, argued the cause, and *T. R. Evans* and *Wm. Gough, Jr.,* both of Chanute, were with him on the briefs for the appellant.

*Robert F. Stadler,* of Humboldt, argued the cause, and *L. T. Cannon,* of Humboldt, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: The primary question in this case concerns the validity of the delivery of a deed during the lifetime of the grantor. The facts are not in dispute and may be summarized briefly as follows:

Charles A. Hulteen, a native of Sweden, came to this country and settled in Wilson County when about nineteen years of age. He became a naturalized citizen of the United States and resided in the Vilas community of Wilson County until his death. He married, but no children were born of the marriage, and his wife preceded him in death. He was industrious and accumulated personal property and two eighty acre farms, one of the latter being the subject of this litigation. He contributed to and, when his health

permitted, attended the Bethel Lutheran Church of Vilas, Wilson County, Kansas, hereinafter referred to as the Church.

C. E. Eklund had been engaged in the real estate and insurance business in Chanute, Kansas, for over forty years. He and Hulteen had known each other for about sixty years. On a number of occasions they had transacted business with each other. In early January, 1946, they met on the street in Chanute, at which time Hulteen said that "he wanted to come up to the office (Eklund's) and fix up a deed on the south eighty to the church." The latter advised him that if he wanted to do that he should bring in his deed or abstract so there would be no mistake in the legal description of the property to be included in the deed. About a week later they again met on the street and Hulteen told him that he had forgotten "to bring that deed in."

On January 25, 1946, Hulteen came to Eklund's office and told him that he wanted to fix up some papers so as to give the south eighty acre tract to the Church. With him he had the deed from his father and mother conveying the property to him. Eklund had his office secretary, Miss Wiggans, fill in the proper blanks in a general warranty joint tenancy deed, conveying to the Church the eighty acre tract in question. Eklund checked it over and handed it to Hulteen, who read it and then signed as grantor. The acknowledgment of his signature was taken by Eklund, who was a notary public. The latter then handed the deed to Hulteen, who in turn handed it back to Eklund and said:

"You put this in your safe and keep it there until I am gone and give it to the Bethel Lutheran Church."

Eklund then took an envelope, upon which Miss Wiggans typed:

"To be delivered to Vilas Lutheran Church of Vilas, Wilson County, Kansas, upon the death of C. A. Hulteen."

The deed was placed in the envelope and sealed. Hulteen saw and read the endorsement on the envelope and expressed approval thereof, following which Eklund put the envelope containing the deed in his safe, where it remained until after Hulteen's death, intestate, on November 20, 1948.

Immediately after his death Eklund advised the Church officials of the deed and delivered it to them. They recorded the deed and went into possession of the property.

This action, filed originally in the probate court, was by the administratrix of Hulteen's estate to recover possession of the prop-

erty in question. The Church prevailed, whereupon the administratrix appealed to the district court. In that court the evidence showed the following, in addition to those facts heretofore summarized:

At the time of his death Hulteen was eighty-four years of age and his surviving heirs-at-law were a brother, niece and nephew. Following the execution of the deed on January 25, 1946, he paid the taxes and collected rents and profits on the eighty acre tract in question. There is no evidence that anyone other than Hulteen, Eklund and Miss Wiggans had any knowledge of the deed during his lifetime. He was in Eklund's office to transact other business during the interim but at no time did he ever request that the deed be returned to him, nor did he ever attempt to or exercise any control or dominion over it. The testimony of both Eklund and Miss Wiggans was to the effect that when the deed was executed Hulteen was positive and emphatic in his desire that the Church have the eighty acre tract in question.

The district court made conclusions of fact substantially as hereinbefore summarized and then rendered the following conclusions of law:

"CONCLUSIONS OF LAW.

"I.

"There was a valid delivery of the deed during the lifetime of Charles A. Hulteen.

"II.

"The delivery of the deed resulted in vesting title in the defendants Bethel Lutheran Church of Vilas, Wilson County, Kansas, a corporation, to the real estate described therein at the time it was deposited with C. E. Eklund.

"III.

"The control of the premises by Charles A. Hulteen and his appropriation of the rents and income therefrom following the execution, acknowledgment and delivery of said deed was not inconsistent with and did not serve to affect or defeat the passing of title to and vesting the same in the defendant Bethel Lutheran Church of Vilas, Wilson County, Kansas."

Judgment was entered accordingly and, her motion for a new trial being overruled, the administratrix has appealed to this court.

Appellant contends that the question before us really narrows down to whether Hulteen, the grantor, intended to pass title to the property at the time he executed the deed and gave it to Eklund, the depository, and it is argued that under the evidence there are only two inferences of a valid delivery, the first being the execution

of the deed itself, and secondly, the placing of it in the hands of Eklund. It is also argued that Hulteen did not effectively place this deed beyond his control, as is evidenced by the testimony of Miss Wiggans to the effect there was a "general understanding" in the office that Hulteen could have had the deed back had he wanted it; that such testimony, coupled with the fact Hulteen subsequently rented the property and collected rents and profits on it, shows that he did not thereby intend presently to pass title to the Church, and that since the Church was neither in possession of the deed nor of the property there could be no presumption of a valid delivery.

There are perhaps few questions which have been the subject of more litigation than that concerning the validity of delivery of deeds and our reports are replete with decisions covering every phase of the subject.

In the early case of *Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490, it was held that before a deed can operate as a valid transfer of title there must be a delivery of the instrument which becomes effective during the life of the grantor; that it is not essential the grantor deliver the instrument to the grantee in person, but that an unconditional delivery to a third person for the use and benefit of the grantee, where the grantor intends to divest himself of the title and to part with all control over the instrument, is ordinarily a sufficient delivery even though there was no formal acceptance of the deed by the grantee until after the grantor's death, such acceptance, where the grant is clearly beneficial, being presumed.

In *Harmon v. Bowers,* 78 Kan. 135, 96 Pac. 51, 17 L. R. A. (N. S.) 502, it was held that the manual deposit of a deed with a third party, to receive and hold the same for the grantee, with the intent thereby to give it effect as a conveyance and to place it beyond the custody and control of the grantor, with a declared or manifest purpose of making a present transfer of title, is a sufficient delivery.

It has been repeatedly held that the question of delivery is largely a matter of intention as shown by all the facts and circumstances, and that to establish such delivery it must appear that the deed passed beyond the control of the grantor. (*Stumpff v. Kaechler,* 95 Kan. 106, 147 Pac. 821; *Johnson v. Cooper,* 123 Kan. 487, 255 Pac. 1112; *Roberts v. McCoach,* 145 Kan. 407, 65 P. 2d 289; *Stump v. Smarsh,* 153 Kan. 804, 113 P. 2d 1058; and *Burgin v. Newman,* 160 Kan. 592, 164 P. 2d 119.)

One of our most exhaustive opinions on the subject is found in

*Hush v. Reeder,* 150 Kan. 567, 95 P. 2d 313. There many of our earlier decisions were reviewed and the court quoted at length from *Young v. McWilliams,* 75 Kan. 243, 89 Pac. 12, where it was said:

". . . Where one who has executed a deed retains it in his own possession, with the intention that it shall become operative upon his death, no conveyance is effected. He dies in the full ownership of the property and the title passes to his heirs or devisees. (Citing authorities.) But where he deposits it with a third person, to be turned over upon his death to the grantee, this is a good delivery if he thereby surrenders all control over it, but not otherwise. (Citing authorities.) In such a case the title is deemed to vest at once in the grantee, only the enjoyment of the property being postponed, a condition which the grantor is competent to create and which arises whenever a purpose on his part to establish it is sufficiently manifested, whether by express instructions to the depositary or otherwise." (p. 245.)

Tested by the foregoing general rules, we think there can be no doubt but that the evidence in this case leads to the inescapable conclusion that a valid delivery of the deed was made by Hulteen during his lifetime. All of the facts and circumstances clearly show the intention on his part to surrender possesion and control of the deed to Eklund for delivery to the Church after his death. Despite the testimony of Miss Wiggins to the effect there was a "general understanding" in the office (and which was a mere conclusion on her part) that Hulteen could have had the deed back had he so desired, the lower court was fully justified in finding that at no time after depositing the deed with Eklund did he ever attempt to exercise any control or authority over it, and that at the time it was his intention to surrender possession of it to Eklund. And neither was Hulteen's control of the property and his collection of rents and profits therefrom, subsequent to the execution of the deed, inconsistent with the passing of title at the time he delivered the deed to Eklund. As to that phase of the matter the test is not whether the grantor has retained possession or control of the property, but rather, whether he has retained possesion or control of the deed. We have no difficulty whatever in agreeing with the lower court that a valid delivery was effected and that such delivery resulted in vesting title in the Church at the time the deed was deposited with Eklund.

The judgment of the lower court is therefore affirmed.